Tlie opinion of the Court was delivered by
Poché, J.
Plaintiff appeals from a judgment of tlie District Court, rejecting her demand against tlie defendant Company, for $10,000, as insurance on the life of her husband, G. R. Todd, under an alleged contract of insurance, evidenced by tlie following document:
$248.80. Shreveport, La., July 22, 1873.
Received of Mr. G. R. Todd, draft for two hundred and forty-eight 80-100 dollars, drawn on J. L. Tomkins, of Shreveport, La., and payable on the 1st day of August next. This draft is given for the amount of the first annual premium on a policy of $10,000 on his life in the Piedmont and Arlington Life Insurance Company, of Virginia, in favor of liis wife, an application for which has this day been made, which, if accepted as a good risk by tbe Company, entitles him to a policy as above named, but if rejected, this receipt to be surrendered and the draft returned.
[Signed] G. W. Terrell,
General Agent.
She alleges that, under the rules of Life Insurance, and of the defendant, such a receipt operates a contract of insurance, unless it be rejected within a reasonable time and the premium refunded; and that the defendant having failed to so reject the insurance, must be held to have accepted the same, and as liable for the sum stipulated in the contract.
After urging a general denial, the defendant specially denies having ever accepted the risk, or having ever issued a binding receipt, and alleges that the receipt sued upon was conditional, depending upon a formal acceptance by tbe Company.
Defendant further alleges, that the deceased Todd, having not completed Ms application, by reason of Ms having failed to submit himself to an examination by a physician, or to furnish the certificate of Ms family physician or the certificate of a Mend, as required by the form of the application which he had signed, said application was never forwarded to, or accepted by the Company.
And it also alleges that immediately after the signing of the application by Todd, the Company’s agent discovered that said Todd had given an untrue answer to one of the questions propounded to appli *66 cants for insurance. Whereupon said agent then and there informed said Todd that his application would not be forwarded or acted upon, and that negotiations for insurance on his life would then and there be closed, and offered to return to Todd his draft, mentioned in the above receipt, on condition of his surrendering said receipt, which said Todd had promised to do, but which was never done, the agent keeping possession of, but having never collected, the draft which he had received from Todd.
On trial, defendant offered oral testimony in support of the averments of its answer, and plaintiffs objected to the introduction of any and all parole testimony, on the. ground that the same was inadmissible to vary and destroy the purport and terms of a written contract, under which, alone, the rights of the parties in this case must be tested. Her objections being overruled, and the testimony admitted, she lias reserved numerous bills of exception, which are all to the same effect, and will, therefore, be considered together, at the threshold of our investigation.
In our opinion, the question suggested by those bills, overshadows the whole case in its importance, and its proper solution, which operates a virtual decision of the cause, involves the consideration of the following pivotal point of the controversy.
Is the receipt in question equivalent to .a contract of insurance ? A proper answer to this question requires the consideration of the two following propositions:
• 1. Whether the parties intended thereby to make a contract of insurance.
2. Whether, if so, the agent of the defendant had the power to make such a contract, and to thus bind the Company.
1. The mere reading of the receipt satisfies our minds that it was not intended as a binding receipt, but merely as an inchoate contract, or as a first step' in a negotiation looking to a future contract of insurance, to be evidenced by a policy of insurance to be issued by the Company, in case the proffered risk was accepted; in default of which, the initiatory steps thus taken were to be abandoned, and the draft and the receipt to be mutually returned and cancelled.
We -are clear that on its face, and according to its own terms, the receipt is not a contract of insurance; that it only operates what it unmistakably purports to do, that is, to lay the foundation for a contract, absolutely depending upon the consent or agreement of the Company. A proper construction of the document, leaves no doubts in our minds of the right of Todd to recover the amount of his draft from the Company, after its payment, on the failure or refusal of the *67 Company to execute a contract of insurance, by issuing tlie stipulated policy.
If, under the terms of the receipt, the Company could be held bound under an insurance contract, it is clear that Todd could not have recovered the amount paid for his premium.
In reaching this conclusion, w'e are not only justified by the plain text of the document, but we are clearly borne out by the construction put upon such receipts by the best elementary writers on Insurance Law, and by judicial interpretations emanating from several of the highest courts in the country. May, on Insurance, H 67, 145; 5 Bigelow, page 18.
But, admitting for the sake of argument, that Terrell, the agent, did intend by such a receipt to bind his principal in an absolute contract of insurance, we are equally clear:
2. That he had no such power and that, therefore, his act in the premises could not operate as a binding contract on the Company.
He disclosed his capacity in the transaction to Todd, who knew that he was dealing with an agent clothed with limited powers.
It is well settled in law and by authority that, unless specially authorized thereto, a life insurance agent has no power to enter into contracts of insurance, and to thus bind his company. Plaintiff alleges and argues that Terrell had such authority, but the evidence proves the very reverse.
Bliss, in his valuable work on Life Insurance, treating of this subject uses the following clear and unambiguous language:
“ Agents of life insurance companies in this country rarely have the authority to conclude absolutely a contract of, or for insurance. The only power they ordinarily possess is to procure and receive applications for insurance to be forwarded to the company, without any authority on their part to make a binding contract. * * * The usage that an agent of a life insurance company is not given authority to conclude an agreement for insurance is so general, that if such authority is claimed to exist in a particular case, there should be affirmative evidence of such actual authority or of its repeated exercise with the knowledge of the company. And this evidence must not be merely inferential, as from the fact that the agent is designated as a General Agent, for even General Agents of life insurance companies have no such power.”
Concluding, as we do, that the receipt cannot be construed as a written contract, but considering it as a conditional agreement laying the foundation of a future contract, depending upon a clearly expressed condition, we think and we hold that parol evidence was properly admitted for the purpose of further explaining the conditions stipulated *68 in the receipt, and of accounting for the failure or refusal of the Company to issue the policy contemplated by the receipt.
We have given due consideration to the authorities quoted by plaintiff’s able counsel in support of their objection to oral testimony touching the agent’s receipt, but we find that they each and all refer to cases where the attempt was to vary or contradict complete written contracts or binding insurance receipts, and not to cases showing an inchoate agreement, such as we are now dealing with. In the case of Trager vs. Ins. Co., 31 A. 235, so earnestly held up as decisive of the issue herein involved, the Court rejected parol testimony, offered for the purpose of contradicting a receijit of payment of his annual jwemium by the assured, which receipt was incorporated in the policy of insurance — the Company’s solemn compact. It is clear that the case has no bearing on this controversy.
- In our examination of the evidence on this point, we find it unnecessary to consider the question of the alleged untrue answers given by Todd in his application, or the alleged agreement between him and Terrell, looking to the return of the agent’s receipt.
The evidence satisfies us that Todd’s application was never completed, owing to his failure to be examined by a physician, to furnish a certificate of his family physician, and to forward the required certificate of a friend. He had been informed that those formalities wore indispensable conditions for the perfection of his contemplated contract with the Company, and in default of his compliance therewith, Terrell was not only justified in withholding the apjilication, but in forwarding it he would have done a vain thing, by which he would have violated the rules of his Company.
His acts, justified as they were by the derelictions of Todd, afford a perfect excuse for the Company’s silence on the, whole subject, and legally and logically explain the failure of the Company to formally rejeet therisk, and to notify Todd of such refusal.
Even if the aj>plication had been forwarded to, and received by the Company, its silence coidd not be construed into an acceptance of the risk. The reverse has been held in the case of Insurance Company vs. Johnson, 23 Pennsylvania, 72.
In that case) the agent was authorized to receive and forward ajiplications, the insurance to take effect on all approvable applications, the day they were taken, and the Court held substantially as follows:
“ The agent gave the receijit for the premium and forwarded the same with the application to the Company, ‘ if not approved by directors, money to be refunded.’ It apjieared, however, that no notice was taken of the apjilication by the Company, nor was the money refunded. And in point of fact, the Company denied that they had ever received the *69 application. Upon these facts it was held that there -was no contract to insure, but simply a proposal forwarded by the agent, and delay under such circumstances to forward a policy or refund the money, ■even if the Company received the application, was rather ground for inference that they rejected, than accepted tbe proposal. A proposal not answered remains a proposal for a reasonable time, and then is regarded as withdrawn.” May on Life Insurance, J 58.
Considering these authorities as conclusive on this point, we must ■hold that the judgment appealed from is just and correct.
Judgment affirmed at appellant’s costs.
Mr. Justice Fenner, having been of counsel, recuses himself in this case.